260 F.3d 997 (9th Cir. 2001)
 HOWARD M. LEE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFF-APPELLANT,
v.
AMERICAN NATIONAL INSURANCE COMPANY; AMERICAN NATIONAL INSURANCE COMPANY OF TEXAS, DEFENDANTS-APPELLEES.
 No. 99-15846
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 13, 2000
Filed August 8, 2001
 
 [Copyrighted Material Omitted]
 Counsel Marie Seth Weiner, Cotchett, Pitre & Simon, Burlingame, California, for the plaintiff-appellant.
 James M. Wagstaffe, Kerr & Wagstaffe Llp, San Francisco, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California Charles A. Legge, District Judge, Presiding D.C. No. CV-97-01532-CAL
 Before: Alex Kozinski, Michael Daly Hawkins and Marsha S. Berzon, Circuit Judges.
 
 
 1
 Opinion by Judge Berzon; Partial Concurrence by Judge Kozinski
 
 
 2
 This case presents the question whether, in a diversity action removed from state court, the entire case must be remanded if the plaintiff lacks Article III standing as to one of several defendants. We conclude that the case need not be remanded, and therefore affirm the district court's denial of plaintiff Howard Lee's motion to remand his suit, in its entirety, to state court.
 
 I. Background
 
 3
 Howard Lee purchased several life insurance policies for himself and members of his family from American National Insurance Company ("ANI"). In exchange for fixed premium payments for a preset number of years, these policies promised a specific schedule of increasing dividends. According to Lee's complaint, however, these benefits were never realized. Similar life insurance policies were issued by the American National Life Insurance Company of Texas ("ANTEX"), a wholly owned subsidiary of ANI, but Lee never bought one of these policies.
 
 
 4
 On March 26, 1997, Lee filed a complaint in California Superior Court on behalf of himself and all other buyers of similar ANI and ANTEX life insurance policies since January 1, 1988. Lee's complaint alleged that because ANI and ANTEX sold policies promising dividends they failed to deliver, their marketing practices violated the California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§§§ 17200 and 17500. Lee also alleged common law causes of action for fraud, breach of the covenant of good faith and fair dealing, negligent misrepresentation, negligence, and unjust enrichment. Asserting that the parties were diverse, ANI and ANTEX promptly removed the case to district court. Lee did not contest the removal.
 
 
 5
 Over the ensuing months, Lee twice moved unsuccessfully for class certification, each time narrowing the scope of the putative class. At the hearing on Lee's second motion for class certification, the district court explained that because Lee had not purchased an ANTEX policy, he could not demonstrate that he had suffered an actual injury and therefore could not establish standing to bring suit in federal court. Even though the California unfair business practices statute requires no such actual injury to pursue a claim in state court, said the district court, Article III of the Constitution "takes priority" in federal court over the California statute's more liberal standing rules.
 
 
 6
 Lee then moved to remand the case to state court.[1] The crux of Lee's argument was that because subject matter jurisdiction was lacking over some of his claims, remand of those claims was mandatory under 28 U.S.C. §§ 1447(c), and that remand of the justiciable claims together with the non-justiciable claims served the interests of judicial economy and convenience.
 
 
 7
 This motion, too, was denied.[2] Although Lee's claims against ANTEX had not been dismissed, the district court's ruling on the remand motion was premised on its previous holding that the court lacked jurisdiction under Article III over Lee's claims against ANTEX. The district court noted that the propriety of removal generally turns upon whether the case is within the district court's original jurisdiction, that there is original jurisdiction over Lee's case because there is complete diversity of the parties, and that dismissal of some but not all claims ordinarily does not affect a district court's original jurisdiction as long as there is jurisdiction over the remaining claims. Dismissal of some claims for lack of Article III standing, the district court reasoned, therefore provides no basis for concluding that removal was improper or that remand of the entire case is appropriate, as long as the remaining claims are within the court's subject matter jurisdiction and justiciable under Article III.
 
 
 8
 The district court certified its denial of Lee's remand motion for interlocutory appeal under 28 U.S.C.§§ 1292(b), stating its view that the requirements of that section were met.[3] In particular, the court acknowledged in its certification order that there was substantial ground for difference of opinion on the question whether the court's conclusion "that plaintiff has no Article III standing as to two of the removed state law causes of action against one defendant[ ] requires that the entire case be remanded to state court." This court agreed that interlocutory appeal was appropriate and granted Lee's petition for interlocutory review of the district court's certified order. We therefore have jurisdiction over Lee's appeal under 28 U.S.C. §§ 1292(b).
 
 
 9
 Our jurisdiction under §§ 1292(b), it is worth noting, is not limited to deciding the precise question the district court certified to us. Rather, we are reviewing the district court's order refusing to remand the case, and may address any issue fairly included within that order. Yamaha Motor Corp. USA v. Calhoun, 516 U.S. 199, 205 (1996). We review de novo the district court's order denying Lee's motion to remand. ARCO Envtl. Remediation L.L.C. v. Dept. of Health & Envtl. Quality, 213 F.3d 1108, 1111 (9th Cir. 2000).
 
 II. Discussion
 
 10
 Lee, a California resident, originally filed this action in California Superior Court. Both defendants, ANI and ANTEX, are Texas corporations whose principal place of business is Texas. The complaint states a claim by Lee for compensatory and punitive damages that will not to a"legal certainty" amount to less than the jurisdictional threshold of $75,000. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). On the face of things, then, the defendants' removal of this action to the district court was proper. See 28 U.S.C. §§§§ 1332, 1441.
 
 
 11
 After removing Lee's action to federal court, however, the defendants contended that Lee cannot meet federal standing requirements with respect to the claims against ANTEX. Lee now appears to accept that proposition as well, as did the district court, and argues that because he therefore cannot proceed in federal court with certain aspects of his case, the entire case must be remanded.
 
 1. Standing
 
 12
 Although the parties now agree that the plaintiffs lack standing to prosecute the claims stated in the complaint against ANTEX, the district court never actually dismissed any claims in this case for lack of standing. Instead, the district court ruled on standing in the context of the class action motions and then necessarily assumed, for purposes of the remand motion, that the claims against ANTEX would eventually be dismissed for lack of standing if the case remained in federal court.
 
 
 13
 It would make little sense for us to decide this case on the assumption that the plaintiff lacks standing to pursue the claims it alleged against ANTEX if that were not the case. The plaintiff is arguing that the district court must decline to entertain jurisdiction over claims that are otherwise properly before it because of the lack of standing over the ANTEX claims. Before considering whether we are required to oust from federal court causes of actions that are, indisputably, within both our statutory and our constitutional jurisdiction, we should determine whether there is any need to consider that course at all. And, although the standing question was not expressly certified to this court, we have, as noted, interlocutory jurisdiction to decide all questions fairly raised by the order under review, of which the district court's earlier ruling concerning standing--on which the order under review was based--is one. We therefore briefly address the standing issue.
 
 
 14
 We agree with the consensus view of the parties and the district court that Lee cannot proceed with his claims against ANTEX in federal court. Lee's action against ANTEX stems from his right under California law to challenge the company's allegedly unfair business practices as a private attorney general even if he suffered no individualized injury as a result of the defendant's challenged conduct. Cal. Bus. & Prof. Code §§ 17204 (authorizing civil action to enforce Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200, by "any person acting for the interests of itself, its members, or the general public"); Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553, 561 (1998). Article III of the Constitution, however, limits the jurisdiction of the federal courts to "cases and controversies," a restriction that has been held to require a plaintiff to show, inter alia , that he has actually been injured by the defendant's challenged conduct. Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc., 528 U.S. 167, 180 (2000). So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury. See, e.g., Cantrell v. City of Long Beach, 241 F.3d 674, 683 (9th Cir. 2001); Fiedler v. Clark, 714 F.2d 77, 79-80 (9th Cir. 1983); Toxic Injuries Corp. v. Safety-Kleen Corp., 57 F. Supp. 2d 947, 954-56 (C.D. Cal. 1999). And Lee cannot, because he did not buy any policy from ANTEX and so did not suffer any injury due to ANTEX's conduct.
 
 
 15
 Even if Lee has a viable action against ANTEX in state court under the California Unfair Business Practices Act, then, he may not proceed with that cause of action in federal court.[4]
 
 2. Removal and Remand
 
 16
 Lee's primary contention in this appeal is that his lack of standing as to one defendant has destroyed subject matter jurisdiction in federal court over the entire case. The notion, it appears, is that by analogy to the "complete diversity" rule, applicable where some but not all of the parties on the two sides are of diverse citizenship from one another, a diversity case cannot go forward where there is Article III jurisdiction over the claims against some but not all of the parties.
 
 
 17
 The analogy, however, simply does not work, for three reasons: First, under this circuit's precedents, it is clear that, as a general matter, there is original jurisdiction, and therefore removal jurisdiction under 28 U.S.C. §§ 1441(a), over a case as long as there is subject matter jurisdiction over one or more of the claims alleged. Second, although the complete diversity rule is, in a sense, an exception to that principle, it is one that is based on a longstanding interpretation of the statute governing diversity jurisdiction that is of no pertinence to the question before us. Finally, the Supreme Court's decision in Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 391-92 (1998), makes clear that a district court may not under §§ 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it, a holding that cannot be squared with Lee's position in this case.
 
 
 18
 A. The general rule concerning removal jurisdiction where the federal court has jurisdiction over some but not all of a case
 
 
 19
 The statute that governs removal jurisdiction in this case, 28 U.S.C. §§ 1441(a), allows removal of"any civil action" over which the district court has original jurisdiction.[5] Our circuit has held that the presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide. Kruse v. State of Hawaii, 68 F.3d 331, 334-35 (9th Cir. 1995).
 
 
 20
 In Kruse, we considered whether a case involving claims against some state and some individual defendants was properly removed to federal court. The plaintiff maintained that removal was improper, and remand was necessary, because the state defendants were asserting Eleventh Amendment immunity from suit. Id. at 334. We held that the Eleventh Amendment bar to deciding some of the plaintiff's claims had no bearing on the district court's original jurisdiction over her case as a whole. Rather, because there was federal jurisdiction over some of her claims, the plaintiff's entire case was removable from state court. Id. at 335. In concluding that the plaintiff's entire case was removable because it was within the district court's original jurisdiction, we specifically rejected the contrary view, espoused by the Fifth and Seventh Circuits, that "removal was improper because the federal court did not have jurisdiction over all of the claims asserted in the action." Id. at 334 (citing McKay v. Boyd Constr. Co. , 769 F.2d 1084, 1086-87 (5th Cir. 1985); Frances J. v. Wright , 19 F.3d 337, 340-41 (7th Cir. 1994)) (emphasis in original).
 
 
 21
 Nothing in our decision in Kruse hinged on the nature of Eleventh Amendment immunity as opposed to any other constitutional limit on federal jurisdiction. Rather, we agreed with the Sixth Circuit's approach that "a jurisdictional bar against particular claims, and not entire cases . . . should not deprive the district court of its otherwise proper jurisdiction over the action." Id. at 334 (citing Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 338-39 (6th Cir. 1990)) (emphasis added). Kruse thus recognized as a general matter that federal jurisdiction over a removed case is "otherwise proper " so long as some claims alleged were within the district court's power to decide, even if the district court cannot decide all the claims before it.
 
 
 22
 Our circuit's reading of §§ 1441(a) is consistent with that enunciated two years later by the Supreme Court. In City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997), the city defendant removed to federal court a plaintiff's lawsuit comprising some federal question claims and some state-law claims reviewing state administrative action. The Court explained that the federal claims within the plaintiff's case:
 
 
 23
 suffice[d] to make the actions "civil actions" within the "original jurisdiction" of the district courts for purposes of removal. §§ 1441(a). . . . [The ] federal claims, "if brought alone, would be removable to federal court." [Citation omitted.] Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the plaintiff's] complaints, by virtue of their federal claims, were "civil actions" within the federal courts' "original jurisdiction."
 
 
 24
 Id. at 166. Stated otherwise, the presence of some federal question claims in the plaintiff's case made the case one over which the district court would have original jurisdiction, a proposition that federal court litigators would find wholly unremarkable.
 
 
 25
 Schacht considered but rejected the suggestion that, because of the availability in that context of supplemental jurisdiction over the state law claims and because of the special provision for removing federal question cases when the federal question is accompanied by a "separate and independent" state law claim, City of Chicago's construction of §§ 1441(a) is pertinent only where the jurisdictional defect concerning some of the causes of action is the failure to assert a federal question context. 524 U.S. at 387-91; see 28 U.S.C. §§§§ 1367(a) & 1441(c). Although in doing so Schacht relied in large part on the consideration that Eleventh Amendment immunity is waivable, id. at 389, that focus is understandable, given the fact that in the case before the Court it was Eleventh Amendment immunity that assertedly affected removal jurisdiction. On its face, however, the discussion of§§ 1441(a) in City of Chicago is simply a generic interpretation of that statute, not dependent on the nature of the claims that brought the case within the federal court's jurisdiction, and not dependent either on the nature of the defect that rendered some of the claims beyond the federal court's authority.
 
 
 26
 Indeed, the Court in City of Chicago, " [h]aving . . . established federal jurisdiction," only then went on to discuss whether "the accompanying state claims . . . fall within a district court's supplemental jurisdiction, not its original jurisdiction." 522 U.S. at 167. So City of Chicago quite explicitly viewed the §§ 1441(a) "original jurisdiction " issue as entirely distinct from the special rules governing retention of jurisdiction in federal question cases over claims not within the federal courts' original jurisdiction.
 
 
 27
 Kruse, City of Chicago, and Schacht all involve cases removed to federal court because they presented claims arising under federal law. This case was removed pursuant to the federal court's diversity jurisdiction. There is no meaningful distinction between federal question and diversity jurisdiction, however, that would direct a different result in this case. Section 1441(a) governs the removal of both kinds of cases. We conclude that, in this case, the district court has jurisdiction over at least some of Lee's claims, such that the case could have been filed in federal court originally, and so had removal jurisdiction.
 
 
 28
 B. The relationship between Lee's lack of standing and "complete diversity"
 
 
 29
 Lee's contention that this case was nonetheless improperly removed from state court because his lack of standing against one defendant destroyed "complete diversity" of the parties is utterly unavailing.
 
 
 30
 Federal subject matter jurisdiction in this case is based on diversity. Although Article III of the Constitution would permit the federal courts to exercise jurisdiction over a broader class of diversity cases, see State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31 (1967), Congress has limited the scope of diversity jurisdiction to cases involving particular alignments of parties. See 28 U.S.C. §§ 1332(a).[6] The diversity jurisdiction statute, as construed for nearly 200 years, requires that to bring a diversity case in federal court against multiple defendants, each plaintiff must be diverse from each defendant. Schacht, 524 U.S. at 388; Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806).
 
 
 31
 That compliance with the diversity statute, including its complete diversity requirement, is the sine qua non of diversity jurisdiction was made clear in Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989). In a case involving claims against multiple defendants, "the plaintiff must meet the requirements of the diversity statute for each defendant." Id. at 829 (emphasis added and emphasis in original omitted). One of the Newman-Green defendants, an American citizen who lived overseas, fell within none of the statutory categories of parties over whom the federal courts may exercise diversity jurisdiction. Because he was not domiciled in any state, this defendant was "stateless" for purposes of the diversity statute, and, under the strictures of §§ 1332, the plaintiff could not pursue an action in federal court against him. Id. at 828. For this reason, the defendant's presence in the case destroyed "complete diversity," rendering the entire case beyond the federal court's power to decide unless he was dismissed. Id. at 829.
 
 
 32
 By insisting that a party who corresponds to none of §§ 1332(a)'s categories destroys original jurisdiction over a diversity case, Newman-Green clarified that the touchstone of diversity jurisdiction, and of "complete diversity," is compliance with the specific dictates of §§ 1332. At the same time, compliance with the geographical and amount-in-controversy requirements of the diversity statute is also the only necessary condition for diversity jurisdiction under §§ 1332. Except for the amount-in-controversy requirement, nothing in§§ 1332 imposes any relevant requirement other than complete diversity of citizenship for coming within that statute. We therefore have no basis for concluding, as Lee invites us to do, that statutory diversity jurisdiction under §§ 1332 fails if jurisdiction over one defendant fails for a reason other than lack of diverse citizenship.
 
 
 33
 That Article III standing has nothing to do with the presence of diversity of the parties is further borne out by the very different considerations underlying the two jurisdictional doctrines. Traditionally, diversity jurisdiction has been viewed as serving the interest in protecting out-of-state defendants from potential state-court bias in favor of local plaintiffs. See generally Wright, Miller & Cooper, Federal Practice & Procedure §§ 3601 (2d ed. 1984). The standing doctrine, on the other hand, derives from the interests in ensuring that parties have the proper incentives to litigate cases as vigorously as they can and in avoiding adjudication of generalized grievances that are better resolved through the legislative process. See, e.g., Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471-76 (1982).
 
 
 34
 Lee's standing problem simply does not implicate the question whether the alignment of parties corresponds with §§ 1332's requirements for diversity jurisdiction. The parties in this case remain citizens of different states, over whom the federal court may exercise jurisdiction under §§ 1332(a)(1). Lee's lack of standing only renders his claims against ANTEX non-justiciable in federal court, but does not alter the presence of complete diversity.
 
 
 35
 C. The district court's authority to remand a case where it has jurisdiction over only some but not all of the claims within the case
 
 
 36
 Finally, Schacht makes clear that the general remand statute, 28 U.S.C. §§ 1447(c), does not provide for a remand in the present circumstances.
 
 
 37
 Schacht concerned a terminated prison guard's §§ 1983 action, filed in state court, against the state corrections department and several of its employees. See 524 U.S. at 383. The defendants removed the suit to federal court under 28 U.S.C. §§ 1441(a) because the guard's claims arose under federal law. Immediately thereafter, the corrections department asserted that its Eleventh Amendment immunity precluded the guard's damages claim against it. See Alabama v. Pugh , 438 U.S. 781, 782 (1978). The Seventh Circuit held that because the Eleventh Amendment barred the federal court from deciding certain claims, the entire case had been improperly removed from state court, and had to be remanded. Schacht, 524 U.S. at 385.
 
 
 38
 The Supreme Court reversed. After determining that the case was properly removed to federal court at the outset, the Supreme Court rejected the plaintiff's contention that "if the `district court lacks subject matter jurisdiction' over any claim, then every claim, i.e., the entire`case,' must be `remanded' to the state court." Id. at 391 (emphasis in original).
 
 
 39
 The remand statute, 28 U.S.C.§§ 1447(c), requires a district court to remand a removed "case" to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Assuming for the purpose of interpreting this statute that the Eleventh Amendment bar to federal-court litigation of certain claims was "a matter of subject-matter jurisdiction," Schacht, 524 U.S. at 391, the Court construed §§1447(c) to mean that the case must be remanded only if subject matter-jurisdiction is lacking over the entire case, and not over just some of the plaintiff's claims. See id. at 392 ("An ordinary reading of the language indicates that the statute refers to an instance in which a federal court `lacks subject matter jurisdiction' over a `case,' and not simply over one claim within a case.").
 
 
 40
 Like the plaintiff in Schacht , Lee argues that "because the district court lacks subject matter jurisdiction over any claim, . . . every claim, i.e., the entire case, must be remanded to the state court." Id. at 391 (internal quotation marks omitted). Because the Schacht Court squarely rejected this proposition, so must we. The district court lacks jurisdiction to decide only some, but not all, of Lee's claims; the court, therefore, could not have remanded Lee's entire case.
 
 
 41
 Lee's standing-deficient claims will have to be disposed of in some manner on remand to the district court. Whether the district court dismisses the ANTEX claims, or Lee dismisses them voluntarily, there should be no obstacle to Lee's refiling them in state court, where he apparently has a viable cause of action which is not time-barred.[7] See Appalachian Ins. Co. v. McDonnell Douglas Corp., 214 Cal. App. 3d 1, 40-41 (Ct. App. 1989); see also Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1136-39 (9th Cir. 2001) (en banc) (summarizing California equitable tolling doctrine). Whether the statute of limitations on a state-law cause of action is tolled under circumstances like those present in this case is, of course, a matter of state law. Cf. 28 U.S.C. §§ 1367(d) (tolling state statutes of limitations for state-law claims dismissed pursuant to the supplemental jurisdiction statute). In some cases, a 1 might forfeit an otherwise viable state-law claim because that claim was part of a removed diversity case which was subsequently determined to be beyond the federal court's power to decide, a result which might militate in favor of remanding, rather than dismissing, non-justiciable state-law claims. Cf. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351-52 (1988) (finding the plaintiff's forfeiting of viable state-law claims a "potent reason" for allowing district courts to remand remaining state-law claims initially removed pursuant to the district courts' supplemental jurisdiction).
 
 
 42
 We need not decide, however, whether the district court could remand only Lee's standing-deficient claims against ANTEX while retaining his other claims, a position Lee advocated earlier in this litigation.[8] Lee's consistent position on this appeal has been that his case must be remanded in its entirety. Even if we were to construe the district court's certified order as also encompassing the denial of Lee's alternative motion to remand only the ANTEX claims, we would decline to address the partial remand alternative here because Lee did not "present a specific, cogent argument for our consideration" on appeal. Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994); see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (9th Cir. 1997).
 
 
 43
 Our circuit's interpretation of §§ 1441(a) and Schacht's interpretation of §§ 1447(c) admittedly may result in largely duplicative state and federal court proceedings in this case and others like it. A case that is properly removed in its entirety may nonetheless be effectively split up when it is subsequently determined that some claims cannot be adjudicated in federal court.[9] Lee raised this prospect as a reason for remanding his entire case (and the defendants raised it as a reason for retaining the entire case in federal court). Schacht, however, has foreclosed the possibility that any preference against forcing the plaintiff to split up his case, both for judicial economy reasons and because the plaintiff enjoys some entitlement to litigate his case as he chooses to, can override the language of §§ 1447(c) proscribing a remand of the entire case when there is subject matter jurisdiction over some of it.
 
 III. Conclusion
 
 44
 In sum, Lee lacks standing to sue ANTEX in federal court, but he and ANTEX are still diverse parties as defined by 28 U.S.C. §§ 1332. The standing defect renders Lee's claim against ANTEX non-justiciable in federal court, but it does not affect the district court's original jurisdiction over the remaining claims in this diversity case. Because the case is within the district court's original jurisdiction, it was properly removed under 28 U.S.C. §§ 1441(a), and may not be remanded in its entirety to state court. Finally, for the procedural reason indicated above, we do not address the question whether it would have been proper to remand only the claims against ANTEX to state court.
 
 
 45
 AFFIRMED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Because Lee's remand motion was premised on the district court's lack of subject matter jurisdiction over the case, it was not untimely. See 28 U.S.C. §§ 1447(c).
 
 
 [2]
 The district court also denied Lee's motion in the alternative to remand only the ANTEX claims.
 
 
 [3]
 Section 1292(b) provides, in pertinent part: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order . . . ."
 
 
 [4]
 The seemingly obvious proposition that a removed case may not go forward in federal court unless Article III standing requirements are met as to some claims may not obtain in cases removed to federal court pursuant to all removal statutes. In International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 78 n.4 (1991), the Supreme Court expressly left open the question whether a plaintiff must have Article III standing with respect to state law claims within the federal court's supplemental jurisdiction to permit removal under 28 U.S.C. §§ 1442(a), the statute allowing federal officer defendants to remove cases from state court.
 
 
 [5]
 28 U.S.C. §§1441(a) provides:
 "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."
 
 
 [6]
 28 U.S.C. §§ 1332(a) provides, in pertinent part:
 The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between -
 (1) citizens of different States;
 (2) citizens of a State and citizens or subjects of a foreign state;
 (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
 (4) a foreign state . . . as plaintiff and citizens of a State or of different States.
 
 
 [7]
 That Lee appears to have a viable state-court cause of action against ANTEX negates the appellees' suggestion that ANTEX was fraudulently joined to defeat federal jurisdiction. Cf. Ritchey v. Upjohn Drug Co., 139 F.3d 1313 (9th Cir. 1998) (because the plaintiff's claims against two nondiverse defendants were time-barred, those defendants had been "fraudulently joined" and did not affect the district court's removal jurisdiction over the case).
 
 
 [8]
 Schacht left open the possibility that §§ 1447(c) might permit a district court to retain claims over which the court has subject matter jurisdiction, but remand those over which it lacks jurisdiction. 524 U.S. at 392. ("Conceivably, one might also read [§§ 1447(c)'s] reference to `case' to include a claim within a case as well as the entire case. . . . [This reading] requires remand only of the relevant claims, and not the entire case."). Some support for this interpretation of §§ 1447(c) derives from the historical origins of the term "civil action" in the removal statutes. See Charles D. Bonanno Linen Serv. Inc. v. McCarthy, 708 F.2d 1, 11 (1st Cir. 1983); Langford v. Gates, 610 F. Supp. 120, 122 (C.D. Cal. 1985). For the procedural reasons delineated in the text, however, we have no occasion in this case to decide whether such a partial remand would be appropriate.
 
 
 [9]
 Schacht's precise holding plainly could lead to such parallel state and federal court litigation if it turned out, on due consideration, that partial remand is not a viable alternative: In a case such as Schacht, the district court may decide the plaintiff's claims against state employees sued in their individual capacity, but, if the state asserts its Eleventh Amendment immunity, may not decide claims against the state. The Eleventh Amendment is no bar, however to state court jurisdiction over a plaintiff's cause of action against a state, Maine v. Thiboutot , 448 U.S. 1, 9 n.7 (1980), so long as the state has consented to suit in its own courts. Nevada v. Hall, 440 U.S. 410, 414 (1979).
 
 
 
 46
 KOZINSKI, Circuit Judge, joining in part and concurring in the judgment:
 
 
 47
 I reach the same result as the majority, but am unable to join all of its opinion. Specifically, I can't sign on to Part II.2.A, which needlessly complicates the question of whether the district court properly removed the case from state court.
 
 
 48
 District courts have "original jurisdiction" under 28 U.S.C. §§ 1332(a) so long as the parties are completely diverse and the amount in controversy exceeds $75,000. And 28 U.S.C. §§1441 says that a case is removable where it falls within the district court's "original jurisdiction." Here, the parties are completely diverse and more than $75,000 is at stake. Therefore, the district court would have had original jurisdiction over the case, and it is removable. The statutory command could hardly be clearer.
 
 
 49
 It's true that, in federal question cases, a jurisdictional bar against some claims does not deprive a court of jurisdiction where other claims arise under federal law. See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 166 (1997); Kruse v. Hawai`i, 68 F.3d 331, 334-35 (9th Cir. 1995). But here we don't have a case where some claims arise under federal law and others don't: None of them do, which is why the case falls within the district court's original jurisdiction only under section 1332, not 1331. Unlike federal-question jurisdiction, diversity jurisdiction turns, not on the nature of the claims, but on the status of the parties. There is no such thing as partial diversity jurisdiction; if the parties are not completely diverse as to all claims, the district court loses original jurisdiction over the entire case. See Wis. Dep't of Corrs. v. Schacht, 524 U.S. 381, 388-89 (1998).
 
 
 50
 Where the district court has "original jurisdiction" pursuant to section 1332, the case is removable and our inquiry ends. Only at the next step, when we ask whether the case should be remanded, need we address questions of standing and other aspects of "subject matter jurisdiction." Compare 28 U.S.C. §§ 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . ." (emphasis added)), with id. §§ 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." (emphasis added)). The majority recognizes this in the next subsection of the opinion: "Lee's standing problem simply does not implicate the question whether the alignment of parties corresponds with§§ 1332's requirements for diversity jurisdiction." Maj. Op. at 10412. With this I agree--Lee's standing-deficient claims have no bearing on the district court's original jurisdiction or whether the case was properly removed; there are no defects in the district court's original jurisdiction. Part II.2.A's reliance on federal question cases where the district court has jurisdiction over some but not all of the claims is inapposite in a case where jurisdiction is established on the basis of diversity. Its inclusion is unnecessary and could be misleading. I am therefore unable to join that portion of the opinion.