**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KATIE VAN, individually and on behalf of all others similarly situated,
*Plaintiff-Appellant*,

v.

LLR, INC., DBA LuLaRoe; LULAROE, LLC,
*Defendants-Appellees.*

No. 19-35242

D.C. No. 3:18-cv-00197-HRH

OPINION

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, District Judge, Presiding

Argued and Submitted June 3, 2020
Anchorage, Alaska

Filed June 24, 2020

Before: Morgan Christen, Paul J. Watford,
and Bridget S. Bade, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

### Article III Standing

The panel reversed the district court's dismissal for lack of Article III standing, held that the temporary deprivation of money gives rise to an injury in fact for purposes of Article III standing, and remanded for further proceedings.

Plaintiff filed this putative class action lawsuit on behalf of LLR, Inc. customers in Alaska who were improperly charged sales taxes. LLR moved to dismiss the complaint for lack of Article III standing because plaintiff could not establish an injury in fact where LLR had fully refunded the tax charges and her claim for interest alone was insufficient to establish standing. Plaintiff was refunded $531.25 for sales tax charges, but plaintiff contended that she was owed at least $3.76 in interest on that sum to account for lost use of the money.

The panel held that the district court erred by concluding that $3.76 was too little to support Article III standing. The panel held that plaintiff suffered a cognizable and concrete injury: the loss of a significant amount of money (over $500) for a substantial amount of time. The panel concluded that the temporary loss of use of one's money constituted an injury in fact for purposes of Article III. The panel noted that plaintiff did not assert that she was injured because she lost interest income, but rather that she was injured because

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

she lost the use of her money, which was an actual, concrete, and particularized injury.

## COUNSEL

Jamisen A. Etzel (argued), R. Bruce Carlson, Kelly K. Iverson, and Kevin W. Tucker, Carlson Lynch LLP, Pittsburgh, Pennsylvania, for Plaintiff-Appellant.

Todd E. Lundell (argued), Steven T. Graham, Randolph T. Moore, Colin R. Higgins, and Anthony J. Carucci, Snell & Wilmer LLP, Costa Mesa, California, for Defendants-Appellees.

## OPINION

PER CURIAM:

This case requires us to address whether the temporary deprivation of money gives rise to an injury in fact for purposes of Article III standing.  We agree with other circuits that "[t]he inability to have and use money to which a party is entitled is a concrete injury." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019). This is so because "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010).  We therefore reverse the district court's dismissal of this action for lack of standing and remand for further proceedings.

# I

Defendants-Appellees, LLR, Inc., dba LuLaRoe, and LuLaRoe, LLC, improperly charged sales tax to customers residing in jurisdictions that do not impose such taxes.[1] Later, after a related lawsuit was filed, LLR refunded the charges to affected customers, but LLR did not pay interest to account for the customers' loss of use of their money. Plaintiff-Appellant, Katie Van, filed this putative class action lawsuit on behalf of LLR customers in Alaska who were improperly charged sales taxes. The operative complaint alleges, inter alia, that LLR failed to compensate Van and putative class members "for the full amount of their damages," including interest. The complaint asserts claims for conversion and misappropriation and for violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. Ann. § 45.50.471.

LLR moved to dismiss the complaint for lack of Article III standing, arguing that Van could not establish an injury in fact, because LLR had fully refunded the tax charges and her claim for interest alone was insufficient to establish standing. The record shows that Van was refunded $531.25 for sales tax charges, but Van contends that she is owed at least $3.76 in interest on that sum to account for her lost use of the money. The district court granted the motion to dismiss, albeit on a ground that LLR had not argued and that LLR does not defend on appeal—that $3.76 "is too little to support Article III standing." Van timely appealed.

---

[1] We refer to Defendants-Appellees collectively as LLR.

## II

"We review de novo a district court's determination that plaintiffs lack constitutional standing." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

## III

To establish standing under Article III of the Constitution, a plaintiff must show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

## A

The district court erred by concluding that $3.76 is "too little to support Article III standing." "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017); *see also Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008) (noting that the loss of "a dollar or two" is sufficient to confer Article III standing); *McGowan v. Maryland*, 366 U.S. 420, 424, 430–31 (1961) (holding that appellants fined $5 plus costs had standing to assert an Establishment Clause challenge); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (Kavanaugh, J.) ("A dollar of economic harm is still an injury-in-fact for standing purposes."); *Carter v.*

*HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) ("Any monetary loss suffered by the plaintiff satisfies th[e injury in fact] element; '[e]ven a small financial loss' suffices." (second alteration in original) (quoting *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013))).

Our decision in *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007) (per curiam), is not to the contrary. In *Skaff*, the defendant hotel failed to assign a room with an accessible shower to the plaintiff, an individual with a disability. *See id.* at 839. The mistake, however, "was immediately corrected," and the plaintiff "suffered no cognizable injury." *Id.* We held that "[t]he mere delay during correction of the problem with the shower is too trifling of an injury to support constitutional standing." *Id.* at 840. Here, by contrast, Van suffered a cognizable and concrete injury: the loss of a significant amount of money (over $500) for a substantial amount of time (months with respect to some purchases, over a year with respect to others). This injury is not too trifling to support standing.

## B

Although LLR does not defend the district court's reasoning, it argues that Van lacks standing because she received a full refund, less interest, on the money she was wrongfully charged. In LLR's view, "the lost time value of money standing alone is too speculative an injury to support Article III standing." Other circuits, however, have held to the contrary. *See MSPA Claims 1*, 918 F.3d at 1318 ("The inability to have and use money to which a party is entitled is a concrete injury."); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("The plaintiffs have standing . . . because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when

banks later restore the principal . . . ."); *Habitat Educ. Ctr.*, 607 F.3d at 457 ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money."); *cf. In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) (per curiam) (addressing damages rather than standing) ("The delay in those Plaintiffs' receipt of their refunds, and the forgone time value of that money, is an actual, tangible pecuniary injury.").

We find the reasoning of these cases persuasive. In *MSPA Claims 1*, 918 F.3d at 1317, for example, two health care plans covered a car accident victim who received treatment at St. Mary's hospital—Allstate, the primary payer, and Florida Healthcare Plus (FHCP), the secondary payer. "[I]nstead of billing Allstate first," as it should have, "St. Mary's billed both Allstate and FHCP for the same medical treatment," and "they both paid." *Id.* "Several months later, without any prompting from FHCP, St. Mary's reimbursed FHCP for the full amount of its prior payment— about $286." *Id.* FHCP's assignee, MSPA, subsequently sued St. Mary's parent company, Tenet Florida, Inc., over the delayed $286 reimbursement. *Id.*

As in this case, Tenet argued that MSPA failed to allege an injury in fact because "FHCP's only 'injury' was not getting its $286 reimbursement, and that injury disappeared when FHCP was paid in full." *Id.* at 1318. The Eleventh Circuit disagreed:

> FHCP's alleged injury stems not just from its entitlement to reimbursement of the appropriate amount but also from its entitlement to receive that reimbursement *on time*. MSPA alleges that the reimbursement was seven months late.

The question is whether delay alone is a "concrete" injury. It is. MSPA alleges a type of economic injury, which is the epitome of "concrete." For seven months, FHCP was unable to use money that (allegedly) belonged to it. The inability to have and use money to which a party is entitled is a concrete injury. FHCP's harm cannot be remedied by simply receiving the amount owed—it requires something more to compensate for the lost time, like interest. And MSPA alleges it is entitled to both interest (and double damages) because of St. Mary's delay in reimbursing FHCP.

*Id.* (citations omitted).

In *Habitat*, the district court required Habitat to post a $10,000 injunction bond. 607 F.3d at 455. Habitat sought review of the bond order on appeal, and the relevant question before the court was whether Habitat had standing to appeal.[2] The court noted that Habitat had not yet been required to pay damages out of the bond, and it was possible that no damages would ever be assessed and thus that the district court would eventually return the $10,000 to Habitat. *See id.* at 457. The court nevertheless concluded that Habitat had standing to challenge the bond order on appeal based on

---

[2] *Habitat* involved standing to appeal, rather than Article III standing, but that distinction is not material to our analysis. *See* 15A Edward H. Cooper, *Federal Practice and Procedure* § 3902 (2d ed. 2020) (noting "the strong affinity between standing to appeal and more general standing doctrines"); *cf. Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1075 (9th Cir. 2001) (discussing the general rule that a party "aggrieved" by a judgment has standing to appeal it).

the "time value" of the $10,000 deposited with the district court:

> It could be argued that unless and until damages are assessed, Habitat has incurred no loss and therefore lacks standing to appeal.  But it *has* incurred a loss—a loss of the use of $10,000.  Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.  Suppose no damages are ever assessed against Habitat and so eventually the court returns the $10,000 that it is holding; there would be no procedural vehicle to enable Habitat to recover the loss of the time value of its money.  Therefore it had standing to challenge the bond order on appeal from the final judgment.

*Id.*

In *Dieffenbach*, 887 F.3d at 827, customers of Barnes & Noble sued after a data breach that resulted in the theft of their credit and debit card information.  The Seventh Circuit held that customers had standing because they "temporarily lost the use of their funds while waiting for banks to reverse unauthorized charges to their accounts."  *Id.*  They had standing "because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal."  *Id.* at 828.

These decisions reflect the firmly established principle that tort victims should be compensated for loss of use of money—through either an award of damages or the payment of prejudgment interest.  Under the common law tort remedies of replevin and conversion, damages for loss of use

are the norm.  *See Dressel v. Weeks*, 779 P.2d 324, 328 (Alaska 1989) ("Damages in an action of conversion generally are measured by the value of the item at the time it was converted plus interest." (quoting *Rollins v. Leibold*, 512 P.2d 937, 944 (Alaska 1973))); *Rollins*, 512 P.2d at 944 ("Replevin is defined as an action brought to recover goods unlawfully taken.  Thus, the normal remedy is the return of the goods.  Damages are also allowed for the value of the use of the goods during the period of detention." (footnote omitted)); Restatement (Second) of Torts §§ 922, 927, 931 (1979).   As the Eleventh Circuit explained in *MSPA Claims 1*:

> Paying interest as compensation for lost time is nothing new.  FHCP's alleged harm is analogous "to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[,]" *Spokeo*, 136 S. Ct. at 1549—a debtor's delinquent payment to a creditor.  In effect, FHCP gave St. Mary's a $286 loan, and St. Mary's paid it back seven months late.  As *Spokeo* teaches, this close analogy to a traditional common law right further supports concreteness.   *Id.*   Thus, MSPA has adequately alleged that FHCP suffered an injury-in-fact.

918 F.3d at 1318 (alteration in original).  Alternatively, loss of use may be addressed through the payment of prejudgment interest.  *See West Virginia v. United States*, 479 U.S. 305, 310–11 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is

entered, thereby achieving full compensation for the injury those damages are intended to redress.").

In sum, we hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III.

## C

Though not raised before the district court, we close by addressing what would otherwise likely arise as an issue on remand:  LLR's fallback argument that Van has failed to adequately allege injury because, to have standing based on the time value of money, "a plaintiff must make specific allegations regarding how it would have earned interest on the money but for the defendant's wrongful conduct."  This argument misstates Van's claimed injury.  Van does not assert that she is injured because she lost interest income. She asserts that she is injured because she lost the use of her money.  Consistent with our opinion here, although the former injury may be speculative, the latter injury is actual, concrete, and particularized.  Interest is simply a way of measuring and remedying Van's injury, not the injury itself. To the extent the Eleventh Circuit's decision in *Kawa Orthodontics, LLP v. Secretary, U.S. Department of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014), suggests that a plaintiff must allege "specific plans to invest its money into an interest-bearing asset" to establish standing based on a temporary deprivation of money, we respectfully decline to follow it.  We note that the Eleventh Circuit did not mention those types of allegations in its subsequent decision in *MSPA*

*Claims 1*, which recognized standing based on the lost use of money.[3]

## IV

We reverse the judgment of the district court dismissing this action for lack of Article III standing and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**  Costs of appeal are awarded to Plaintiff-Appellant Van.

---

[3] We need not consider what evidentiary showing a plaintiff must make under Alaska law to recover interest as a component of damages in connection with a temporary, wrongful deprivation of money.  That issue has not been presented, and our focus is on whether Van has shown an injury in fact under Article III, not whether she has adequately alleged a claim for compensatory damages under Alaska law.